1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHARLES HAYWOOD,<br><br>     Plaintiff,<br><br>  v.<br><br>AMAZON.COM, INC., and its affiliate<br>AMAZON.COM SERVICES LLC,<br><br>    Defendants. | CASE NO. 2:22-cv-01094-JHC<br><br>ORDER GRANTING AMAZON'S<br>MOTION TO DISMISS |

**I**

**INTRODUCTION**

   Before the Court is Defendants Amazon.com, Inc. and Amazon.com Services LLC's (collectively, Amazon) motion to dismiss.  Dkt. # 12.  The Court has considered the parties' submissions in connection with the motion, the balance of the case file, and the applicable law. Being fully advised, for the reasons below, the Court GRANTS Amazon's motion and DISMISSES the complaint with prejudice.

1

## II

### BACKGROUND

Amazon operates an online store that sells books, among other products.  Dkt. # 1 at 6.

As part of its online bookstore, Amazon allows users to post book reviews on its platform.  *Id.* at

6, 8.  This case concerns Plaintiff Charles Haywood's ability to post book reviews—"his

preferred form of exposition"—on the Amazon platform.  *Id.* at 5.

A.     Amazon's Conditions and Guidelines

To post a book review on Amazon, users must agree to Amazon's Conditions of Use

(Conditions) and Community Guidelines (Guidelines).  *See generally* Dkt. # 1-1 (Conditions);

Dkt. # 1-2 (Guidelines).  Such a review must comply with these Conditions and Guidelines.  *See*

Dkt. ## 1-1, 1-2.  Under its Conditions, Amazon "reserves the right to refuse service, terminate

accounts, terminate [a user's] rights to use Amazon Services, remove or edit content, or cancel

orders in its sole discretion."  Dkt. # 1-1 at 2.  Users "may post reviews . . . so long as the content

is not illegal, obscene, threatening, defamatory, invasive of privacy, . . . or otherwise injurious to

third parties or objectionable."  *Id.*  As for a user's reviews, "Amazon reserves the right (but not

the obligation) to remove or edit such content."  *Id.*

Amazon's Guidelines apply to a user's "[i]nteractions with other community members

and Amazon."  Dkt. # 1-2 at 1.  The Guidelines regulate the use of "community features,"

including a user's ability to post reviews on Amazon.  *Id.*  The Guidelines bar "[p]rofanity,

obscenities, or name-calling," "[h]arassment or threats," "[a]ttacks on people you disagree with,"

and "[l]ibel, defamation, or inflammatory content."  *Id.* at 2.  The Guidelines similarly prohibit

hate speech, defined as the expression of hatred of people based on characteristics like race,

ethnicity, or nationality, among others.  *Id.* at 2–3.  When a user violates the Guidelines, Amazon

1

2

may "[r]emove their content," "[l]imit their ability to use community features," or "[s]uspend or terminate their account." *Id.* at 4.

3

B.      Summary of Plaintiff's Allegations

4

Plaintiff alleges: In 2015, he began posting book reviews on Amazon. Dkt. # 1 at 8. In

5

2019, Amazon twice informed Plaintiff that he had violated the Guidelines. *Id.* In October

6

2019, Amazon deleted Plaintiff's reviews and revoked his ability to post reviews on Amazon's

7

platform, without offering an explanation. *Id.* In 2019, Amazon's Conditions "required any

8

dispute to be resolved via binding arbitration." *Id.* In November 2019, Plaintiff initiated

9

arbitration proceedings to dispute Amazon's actions.[1] *Id.* During these proceedings, Amazon

10

said that two of Plaintiff's reviews violated its Guidelines. *Id.* The first review called Donald

11

Trump "a buffoon," and in the second, Plaintiff said that two authors were "unable to realize, not

12

that the joke is on them, but that they themselves are the joke." *Id.* at 8–9. In July 2020, the

13

arbitrator "issued an order in favor of Amazon."[2] *Id.* at 9. In November 2021, Amazon and

14

Plaintiff entered into a settlement agreement in which Amazon restored Plaintiff's review

15

privileges and, in exchange, Plaintiff agreed to abide by Amazon's policies going forward. *Id.*

16

Plaintiff resumed posting book reviews once Amazon restored his access. *Id.*

17

Plaintiff further alleges: On January 24, 2022, Amazon sent Plaintiff a warning that

18

"[o]ne or more of [Plaintiff's] posts were found to be outside [Amazon's] guidelines," and that

19

more violations may result in revocation of Plaintiff's ability to post reviews. *Id.* Around that

20

time, Plaintiff noticed that Amazon had deleted one of his book reviews. *Id.* On February 1,

21

2022, Amazon emailed Plaintiff stating that he could no longer post reviews on the platform

22

23

24

[1] The complaint does not describe the claims Plaintiff brought against Amazon in the arbitration proceedings. *See* Dkt. # 1 at 8–9.
[2] The complaint does not describe the conclusions reached by the arbitrator. *See generally* Dkt. # 1.

ORDER GRANTING AMAZON'S MOTION TO DISMISS - 3

because of repeated violations of the Guidelines. *Id.* at 10. Concurrently, Amazon removed all of Plaintiff's reviews from its platform. *Id.* Several weeks later, Amazon informed Plaintiff that it had revoked Plaintiff's ability to post reviews because of two reviews that violated the Guidelines: (1) a January 16, 2022, review stating that "many Millennials are woketards"; and (2) a January 25, 2022, review that referred to the COVID-19 pandemic as the "Wuhan plague." *Id.* at 10–11.

C.    Procedural History

The complaint contains three counts: breach of contract, *id.* ¶¶ 52–62 (Count I[3]); violation of Washington's Consumer Protection Act (CPA), Rev. Code of Wash. 19.86.010 *et seq.*, *id.* ¶¶ 63–67 (Count II); and "declaratory judgment," *id.* ¶¶ 68–70 (Count III). Count I alleges that Amazon (1) breached the terms of the parties' contract by removing Plaintiff's reviews and banning him from posting reviews, and (2) breached the implied duty of good faith and fair dealing by failing to adequately explain its actions with respect to Plaintiff's review privileges. *Id.* ¶¶ 52–62. Count II alleges that Amazon's practice of not sufficiently explaining its decisions and its inconsistent application of the Conditions and Guidelines violate Washington's CPA. *Id.* ¶¶ 63–67. Count III seeks a declaration that section 230 of the Communications Decency Act (CDA), 47 U.S.C. § 230, does not bar Plaintiff's claims. *Id.* ¶¶ 68–70. Plaintiff seeks declaratory relief, injunctive relief to restore his review privileges, and money damages. *Id.* at 15.

Amazon moves to dismiss Plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(6). Dkt. # 12. Amazon makes four arguments: (1) the breach of contract claim rests on a

---

[3] The parties interpret Count I as containing two separate claims: for breach of contract and for breach of the implied duty of good faith and fair dealing. *See generally* Dkt. ## 13, 16, 17. The Court follows the parties' lead and analyzes these claims individually. *See infra* §§ III.B.1–2.

ORDER GRANTING AMAZON'S MOTION TO DISMISS - 4

non-existent legal duty; (2) the purported "non-contract" claims—violation of the CPA, breach of the implied duty of good faith and fair dealing, and declaratory judgment—fail to state a claim; (3) section 230(c)(1) of the CDA bars the non-contract claims; and (4) the First Amendment bars the non-contract claims.[4]  *See generally id.*

### III
### DISCUSSION

A.    Legal Standards for Motion to Dismiss

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  Dismissal is proper when the complaint states no cognizable legal theory, *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010), or fails to plead facts that allow a court to draw the reasonable inference that the defendant is liable for the alleged misconduct, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A court construes the complaint in the light most favorable to the nonmovant.  *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).  Courts need not accept as true legal conclusions or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.  A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In general, on a Rule 12(b)(6) motion, district courts should consider only the pleadings. *Shaver v. Operating Engineers Loc. 428 Pension Tr. Fund*, 332 F.3d 1198, 1201 (9th Cir. 2003). But district courts may consider "materials incorporated into the complaint by reference." *New Mexico State Inv. Council v. Ernst & Young LLP*, 641 F.3d 1089, 1094 (9th Cir. 2011).  External

---

[4] Below, the Court concludes that the complaint fails to state a claim for each cause of action. Because Amazon's motion can be resolved on other grounds, the Court declines to reach Amazon's arguments that the First Amendment bars Plaintiff's "non-contract" claims.

documents may be incorporated by reference into a complaint if the "plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Similarly, the Ninth Circuit extends "the doctrine of incorporation by reference to consider documents in situations where the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question, and there are no disputed issues as to the document's relevance." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).

In its motion, Amazon refers to Plaintiff's website and the July 31, 2020, arbitration decision for Plaintiff's prior claim against Amazon. *See* Dkt. # 12 at 9, 11; Dkt. # 13-1. Plaintiff asks the Court to not consider these materials. Dkt. # 16 at 8–9.

Plaintiff's website and the arbitration decision do not fall within the scope of the incorporation by reference doctrine. The complaint contains merely one reference to Plaintiff's website. *See* Dkt. # 1 ¶ 24 ("[Plaintiff] publishes an online magazine, The Worthy House (https://www.theworthyhouse.com), and, as noted above, he has posted a large number of his preferred form of exposition, book reviews, on Amazon."). Plaintiff neither refers to his website extensively nor does his website, or its contents, form the basis of Plaintiff's claims. *See Ritchie*, 342 F.3d at 908. Plaintiff's claims concern his reviews on Amazon's platform, not his writings on his personal website. Similarly, the complaint refers just once to the July 2020 arbitration decision. *See* Dkt. # 1 ¶39. Plaintiff's claims do not rely on the decision, and the Court questions its relevance to Plaintiff's present claims. *See Ritchie*, 342 F.3d at 908; *Coto Settlement*, 593 F.3d at 1038.

Separately, no party disputes that the Court may consider Amazon's Conditions and Guidelines, which are attached to the complaint, *see* Dkt. ## 1-1, 1-2, for purposes of this motion. *See Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th

Cir. 1989) (explaining that "material which is properly submitted as part of the complaint may be considered" by district courts when ruling on a Rule 12(b)(6) motion).

B.    Breach of Contract

Plaintiff concedes that the Conditions and Guidelines created a valid contract between Amazon and Plaintiff.  Dkt. # 1 ¶ 52 (alleging that the Conditions and Guidelines "constituted a written, enforceable contract between [Plaintiff] and Amazon under Washington law").  *See* Dkt. # 12 at 22 (Amazon describing its Conditions and Guidelines as "completely integrated written instruments"); *see also Apollo Grp., Inc. v. Avnet, Inc.*, 58 F.3d 477, 482 (9th Cir. 1995) ("A completely integrated contract is a contract adopted by the parties as a complete and exclusive statement of the terms of the contract.") (internal citation omitted).

1.    Breach of express provision

To prevail on a breach of contract claim in Washington, a plaintiff must show that: (1) "the contract imposes a duty"; (2) "the duty [was] breached"; (3) and "the breach proximately cause[d] damages" to the plaintiff.  *Nw. Indep. Forest Mfrs. v. Dep't of Lab. & Indus.*, 78 Wash. App. 707, 712, 899 P.2d 6 (1995).

Count I alleges that Amazon committed three breaches: (1) "Amazon breached its contractual duty under Washington law to allow [Plaintiff] to post book reviews when it banned him from posting reviews" in February 2022; (2) in banning Plaintiff, Amazon "breached its duty to . . . allow [Plaintiff] to post reviews if he complied with" Amazon's Conditions and Guidelines; and (3) in banning Plaintiff, Amazon "breached its duty to make any determinations that [Plaintiff] had failed to comply with Amazon's Conditions . . . and its . . . Guidelines fairly and in good faith."  Dkt. # 1 ¶¶ 53, 55–56.

There are two sections of the Conditions at issue.  The "Your Account" section grants Amazon the right to terminate accounts, terminate a user's right to use Amazon's services, or

remove or edit content.  Dkt. # 1-1 at 2.  The "Reviews, Comments, Communications, and Other Content" section, which directly follows the "Your Account" section, advises users about what content they "may" post, "so long as the content is not illegal, obscene, threatening, defamatory, . . . or otherwise injurious to third parties or objectionable."  *Id.*

Plaintiff seems to say that the provision granting Amazon sole discretion does not control: "[Plaintiff's] complaint alleges that Amazon was only allowed to remove his reviews and to suspend his privileges if in fact he violated the enumerated restrictions in the [Conditions] or [Guidelines].  This is the only logical reading of the text of the parties' written agreement."  Dkt. # 16 at 17.  Plaintiff contends that the provision granting Amazon sole discretion to remove reviews and terminate review privileges renders the "enumerated restrictions" that appear elsewhere in the Conditions and Guidelines illusory.  *Id.* at 18.  For this same reason, Plaintiff argues that Amazon's Conditions and Guidelines are ambiguous.  *Id.* at 18–19.

Notwithstanding Plaintiff's arguments, the complaint identifies no provision from the Conditions and Guidelines that imposes a contractual duty that Amazon purportedly breached. Failing to identify a breached contractual provision dooms a breach of contract claim.  *See, e.g.*, *Ogorsolka v. Residential Credit Sols., Inc.*, No. 2:14-CV-00078-RSM, 2014 WL 2860742, at *7 (W.D. Wash. June 23, 2014) (concluding that because the complaint "failed to identify any relevant portion of a contract that Defendants breached," the plaintiffs failed to state a cognizable breach of contract claim); *BP W. Coast Prod., LLC v. Shalabi*, No. C11-1341-MJP, 2012 WL 441155, at *4 (W.D. Wash. Feb. 10, 2012) ("A breach of contract claim must point to a provision of the contract that was breached."); *Denton v. Dep't Stores Nat. Bank*, No. C10-5830-RBL, 2011 WL 3298890, at *5 (W.D. Wash. Aug. 1, 2011) (breach of contract claim failed "as a matter of law because [the] plaintiff has failed to identify a term breached"); *Curl v. CitiMortgage, Inc.*, No. 14-CV-01829-VC, 2014 WL 5321063, at *2 (N.D. Cal. Oct. 17, 2014)

("[Plaintiff's] fourth cause of action, for breach of contract, fails because [the] complaint does not identify any express contractual provision that was breached by Defendants.").

Even if Plaintiff had pointed to a contractual duty that was allegedly breached, the plain language of the Conditions grants Amazon—in its "sole discretion"—the right to remove Plaintiff's reviews and revoke his review privileges. Dkt. # 1-1 at 2. The Conditions explain that Amazon "reserves the right" to "terminate [a user's] rights to use Amazon Services" and "remove or edit content" in Amazon's "sole discretion." Dkt. # 1-1 at 2. And Amazon "reserves the right . . . to remove or edit" user reviews. *Id.* Plaintiff's breach of contract claim fails to state a claim because it seeks to hold Amazon liable for conduct authorized by the contract.

Courts in the Ninth Circuit have routinely held that a breach of contract claim is not legally cognizable when based on conduct that the contract permits. *See, e.g.*, *Talyancich v. Microsoft Corp.*, No. C12-1128-JCC, 2012 WL 12941690, at *2 (W.D. Wash. Nov. 2, 2012) ("Where the defendant's conduct is expressly authorized by the terms of the contract, there is no breach."); *Stach v. Amazon Servs. LLC*, No. CV 15-1468-R, 2015 WL 13283841, at *1 (C.D. Cal. Sept. 8, 2015) (explaining that "[t]he conduct Plaintiff alleges to constitute the breach . . . is something that Amazon had a contractual right to do per the terms of the contract" that granted Amazon "sole discretion" to "block [Plaintiff] from adding goods to an inventory list and erasing goods from [Plaintiff's list]"); *Evergreen Int'l Airlines, Inc. v. Boeing Co.*, No. C10-0568-JCC, 2010 U.S. Dist. LEXIS 140547, at *7 (W.D. Wash. June 9, 2010) (dismissing breach of contract claim based on Boeing's termination of the contract after the initial five-year term because the contract "provided Boeing with the unconditional right not to renew the contract" and it required no "condition, circumstance, or reason" for Boeing to exercise its termination right); *Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1117 (N.D. Cal. 2011) (dismissing breach of contract claim because the complaint "does not allege any provision of the contract prohibiting Facebook

1   from terminating an account in the manner alleged"); *Zhou v. Breed*, 2022 WL 135815, at *2

2   (9th Cir. Jan. 14, 2022) (dismissing breach of contract claim where contract grants the defendant

3   "sole discretion" over the allegedly breached provision); *King v. Facebook, Inc.*, 2019 WL

4   6493968, at *2 (N.D. Cal Dec. 3, 2019) (same).

5       As for Plaintiff's arguments, the Court sees no ambiguity in the Conditions and

6   Guidelines, nor does the provision granting Amazon sole discretion render other provisions

7   illusory.  The Conditions describe the kinds of reviews that users "may" post, *see* Dkt. # 1-1 at 2,

8   while the Guidelines outline the content that Amazon does not allow, *see* Dkt. # 1-2 at 2–4.  But

9   explanations surrounding the types of content a user "may" post impose no contractual duty on

10  Amazon.  *See Blueshield v. State Off. of Ins. Com'r*, 131 Wash. App. 639, 650, 128 P.3d 640

11  (2006) (explaining that "the use of 'may' . . . indicates that the provision is permissive and not

12  binding") (internal quotation omitted); *see also Hard 2 Find Accessories, Inc. v. Amazon.com,*

13  *Inc.*, 58 F. Supp. 3d 1166, 1173 (W.D. Wash. 2014), *aff'd*, 691 F. App'x 406 (9th Cir. 2017)

14  (holding that Amazon's "Prohibited Seller Activities and Actions" provision was "simply an

15  explanatory statement" that created no "contractual obligations upon which [the plaintiff's]

16  breach of contract claim could be based").  Nor does such guidance about what users may post

17  override Amazon's right to remove content or revoke a user's privileges.  *See* Dkt. # 1-1 at 2

18  ("Amazon reserves the right to . . . terminate [a user's] rights to use Amazon Services [or]

19  remove or edit content . . . in its sole discretion.").

20      The allegations in Count I fail to state a claim for breach of contract because the

21  complaint identifies no contractual provision that Amazon purportedly breached and because

22  Plaintiff seeks to hold Amazon liable for conduct authorized by the contract.

23

24

1

2     2.   Breach of implied duty of good faith and fair dealing

3     In Washington, "'[t]here is in every contract an implied duty of good faith and fair

4   dealing' that 'obligates the parties to cooperate with each other so that each may obtain the full

5   benefit of performance.'" *Rekhter v. State, Dep't of Soc. & Health Servs.*, 180 Wash. 2d 102,

6   112, 323 P.3d 1036 (2014) (quoting *Badgett v. Security State Bank*, 116 Wash. 2d 563, 569, 807

7   P.2d 356 (1991)).  But the duty does not "inject substantive terms into the parties' contract," nor

8   does it "extend to obligate a party to accept a material change in the terms of its contract."

9   *Badgett*, 116 Wash. 2d at 569 (internal citation and quotation marks omitted).  Rather, the duty

10  "requires only that the parties perform in good faith the obligations imposed by their agreement."

11  *Id.*  The duty is not "free-floating," but "exists only in relation to performance of a specific

12  contract term."  *Id.  See Johnson v. Yousoofian*, 84 Wash. App. 755, 762, 930 P.2d 921 (1996)

13  ("The implied duty of good faith is derivative, in that it applies to the performance of specific

14  contract obligations.  If there is no contractual duty, there is nothing that must be performed in

15  good faith.") (internal citation and quotation marks omitted).

16    Count I alleges that Amazon breached the implied duty of good faith and fair dealing by

17  not, "in good faith," explaining how Plaintiff's reviews violated the Guidelines, not engaging "in

18  any effort to resolve [Amazon's] concerns" before deleting Plaintiff's reviews, and not

19  disclosing the criteria Amazon used in removing Plaintiff's reviews.  Dkt. # 1 ¶¶ 57–58.

20    Plaintiff's implied duty claim fails for the same reason the breach of contract claim fails.

21  As noted above, the implied duty claim cannot create new contractual obligations; it requires the

22  parties to adhere to the contracts they create.  Because Plaintiff identifies no contractual

23  provision that Amazon allegedly breached, Plaintiff has failed to state a cognizable claim for

24  breach of the implied duty of good faith and fair dealing.  *See, e.g.*, *Wear v. Sierra Pac. Mortg.*

*Co.*, No. C13-535-MJP, 2013 WL 6008498, at *6 (W.D. Wash. Nov. 12, 2013) (dismissing

breach of good faith and fair dealing claim because the plaintiff "fail[ed] to identify which terms of the loan give rise to [their] claim"); *Chapel v. BAC Home Loans Servicing, LP*, No. C11-5882-BHS, 2012 WL 727135, at *4 (W.D. Wash. Mar. 6, 2012) (dismissing claim based on the plaintiff's "failure to show which terms of the contract give rise to [their] claim for breach of the duty of good faith and fair dealing"); *Gossen v. JPMorgan Chase Bank*, 819 F. Supp. 2d 1162, 1170 (W.D. Wash. 2011) (dismissing breach of duty of good faith and fair dealing claim because the plaintiffs "fail[ed] to identify any contract provision that Chase or [the trustee] failed to perform"); *Denton v. Dep't Stores Nat. Bank*, No. C10-5830-RBL, 2011 WL 3298890, at *5 (W.D. Wash. Aug. 1, 2011) (dismissing breach of duty of good faith and fair dealing claim because the plaintiff identified no breached term).

As with the breach of contract claim, the allegations in Count I fail to state a claim for breach of the implied duty of good faith and fair dealing because the complaint identifies no contractual provision that Amazon purportedly breached.[5]

---

[5] Separately, Plaintiff's implied duty claim seeks to require Amazon to moderate the content that appears on its platform in "good faith." *See* Dkt. # 1 ¶ 57. But because the contract unambiguously grants Amazon the sole discretion to moderate content, it does not appear that such a "good faith" requirement exists. *See, e.g.*, *Myers v. Dep't of Soc. & Health Servs.*, 152 Wash. App. 823, 828–30, 218 P.3d 241 (2009) (affirming dismissal of implied duty of good faith and fair dealing claim because a termination for convenience clause granted the agency the "broad authority to terminate the contract"); *Willis v. Champlain Cable Corp.*, 109 Wash. 2d 747, 759, 748 P.2d 621 (1988) (declining to insert a good faith limitation for the contract's at-will termination provision and concluding that "it would be even more incongruous to hold that an implied covenant of good faith, or a 'bad faith exception,' can override express contract terms"); *Yousoofian*, 84 Wash. App. at 762–63 (where landlord had an "absolute privilege" to refuse to consent to a tenant's lease assignment, there was no contractual duty to which the implied duty of good faith and fair dealing attached); *New Vision Programs Inc. v. State, Dep't of Soc. & Health Servs.*, 193 Wash. App. 1011 (2016) ("[N]o implied duty of good faith and fair dealing exists where a party has unilateral authority to do or not do something under a contract.") (unpublished). *See also Sweet v. Google Inc.*, No. 17-CV-03953-EMC, 2018 WL 1184777, at *9 (N.D. Cal. Mar. 7, 2018) (concluding under analogous California law that YouTube's terms, which granted YouTube "complete control" over decisions involving advertisements, "need not be deemed subject to the implied covenant of good faith and fair dealing in order to prevent the agreement from being illusory"); *Ebeid v. Facebook, Inc.*, No. 18-CV-07030-PJH, 2019 WL 2059662, at *8 (N.D. Cal. May 9, 2019) (implied covenant of good faith and fair dealing claim that Facebook did not "exercise its contractual right to remove or

1

C.      Violation of Washington's CPA

2
        To state a claim under Washington's CPA, a plaintiff must allege an "(1) unfair or
3
deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4)
4
injury to plaintiff in [their] business or property; [and] (5) causation." *Hangman Ridge Training*
5
*Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash. 2d 778, 780, 719 P.2d 531 (1986).  The failure to
6
establish any element undermines a CPA claim.  *Id.* at 784.  Because Plaintiff does not plead
7
sufficient facts to satisfy two of the five elements, Plaintiff fails to state a viable CPA claim in
8
two separate ways.
9
        1.      Unfair or deceptive act or practice
10
        To meet this element, a plaintiff must "establish that the unfair or deceptive act or
11
practice had the capacity to deceive a substantial portion of the public."  *Young v. Toyota Motor*
12
*Sales, U.S.A.*, 196 Wash. 2d 310, 317, 472 P.3d 990 (2020).  "Deception exists 'if there is a
13
representation, omission or practice that is likely to mislead' a reasonable consumer."  *Panag v.*
14
*Farmers Ins. Co. of Washington*, 166 Wash. 2d 27, 50, 204 P.3d 885 (2009) (quoting *Sw.*
15
*Sunsites, Inc. v. Fed. Trade Comm'n*, 785 F.2d 1431, 1435 (9th Cir. 1986)).  Whether an act or
16
practice was unfair or deceptive is a question of law.  *Eng v. Specialized Loan Servicing*, 20
17
Wash. App. 2d 435, 445, 500 P.3d 171 (2021).
18
        Count II alleges that Amazon violated Washington's CPA by engaging in the following
19
alleged "unfair and deceptive acts and practices": (1) not explaining Amazon's decisions to
20
remove reviews or ban users; (2) inconsistently applying its Conditions and Guidelines; and (3)
21
using "unstated and undisclosed criteria" to remove reviews or ban users.  Dkt. # 1 ¶ 63.

22

23
disapprove any post in good faith" failed under analogous California law because "Facebook had the
24
contractual right to remove or disapprove of any post or ad at Facebook's sole discretion").

Plaintiff alleges Amazon's content decisions are part of a "pattern and practice" of conduct, with no further details. *Id.*

Plaintiff fails to allege an unfair or deceptive act or practice. As with Plaintiff's other claims, the CPA claim is based on Amazon's decisions to remove reviews and revoke review privileges. The Conditions and Guidelines expressly provide that Amazon may take these actions. Reasonable consumers, after reading the Conditions and Guidelines, would understand that Amazon reserves the right to remove reviews or terminate access to services in Amazon's sole discretion. Dkt. # 1-1 at 2. And exercising a right that a contract permits and is fully disclosed to the parties in advance is not an unfair or deceptive act or practice. *See, e.g.*, *Lowden v. T-Mobile USA, Inc.*, No. C05-1482- MJP, 2009 WL 537787, at *3 (W.D. Wash. Feb. 18, 2009), *aff'd*, 378 F. App'x 693 (9th Cir. 2010) (dismissing CPA claim for failure to allege an unfair or deceptive act or practice because the contract "sufficiently disclosed" and permitted the alleged deceptive practices); *Smale v. Cellco P'ship*, 547 F. Supp. 2d 1181, 1186, 1188 (W.D. Wash. 2008) (concluding as a matter of law that Verizon's contract was neither deceptive nor unfair because Verizon "adequately disclose[d]" the alleged deceptive practice and "any reasonable consumer reading the Agreement would realize that Verizon reserved the right to assess surcharges"). As for the allegations that Amazon inconsistently applies its Conditions and Guidelines and uses unstated and undisclosed criteria to inform its decisions, Plaintiff does not allege any facts to state a plausible claim that Amazon's practices are "likely to mislead" reasonable consumers. *Panag*, 166 Wash. 2d at 50. Plaintiff's allegations do not establish an "unfair or deceptive" practice.

2.    Public interest impact

As for the public interest impact, "[o]rdinarily, a breach of a private contract affecting no one but the parties to the contract is not an act or practice affecting the public interest."

1   *Hangman Ridge Training Stables, Inc.*, 105 Wash. 2d at 790.  For this element, a plaintiff must

2   allege a likelihood that others "have been or will be injured in the same fashion."  *Goodyear Tire*

3   *& Rubber Co. v. Whiteman Tire, Inc.*, 86 Wash. App. 732, 745, 935 P.2d 628 (1997).  An act or

4   practice affects the public interest when "(1) it is part of a pattern or generalized course of

5   conduct, and (2) there is a real and substantial potential for repetition of defendant's conduct

6   after the act involving plaintiff."  *Eifler v. Shurgard Cap. Mgmt. Corp.*, 71 Wash. App. 684, 697,

7   861 P.2d 1071 (1993).

8          Plaintiff fails to allege the public interest element of his CPA claim.  Plaintiff states that

9   "Amazon's unfair or deceptive practices are injurious to the public interest because they have the

10  capacity to deceive a substantial portion of the public."  Dkt. # 1 ¶ 65.  Plaintiff's conclusory

11  statement is insufficient.  Plaintiff alleges no facts tending to show a "pattern or generalized

12  course of conduct" such that "there is a real and substantial potential for repetition" of Amazon's

13  conduct.  *Eifler*, 71 Wash. App. at 697.  *See* Dkt. # 1 ¶¶ 5–7, 63, 69 (alleging Amazon engaged

14  in a "pattern and practice" of not explaining its decisions to remove reviews or revoke review

15  privileges, with no further details).  Nor does Plaintiff allege that other persons have been or will

16  be harmed just as Plaintiff; the complaint only concerns Amazon's treatment of Plaintiff's

17  account and the reviews Plaintiff wrote.

18          For a CPA claim, a finding that any element is missing is fatal to the claim.  *Goodyear*

19  *Tire & Rubber Co.*, 86 Wash. App. at 743.  Count II fails to state a CPA claim for two separate

20  and independent reasons: it fails to sufficiently allege the first and third elements of his CPA

21  claim.

22

23

24

D.      CDA Immunity

Amazon argues that a separate and independent ground bars Plaintiff's claims under the CPA and for breach of the implied duty of good faith and fair dealing: Section 230(c)(1) of the CDA.[6]  Dkt. # 12 at 13–17.  The Court agrees.

"Section 230 of the CDA immunizes providers of interactive computer services against liability arising from content created by third parties."  *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008).  *See Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003) (explaining that section 230 "provides broad immunity for publishing content provided primarily by third parties").  "The prototypical service qualifying for [CDA] immunity is an online messaging board (or bulletin board) on which Internet subscribers post comments and respond to comments posted by others."  *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1266 (9th Cir. 2016) (internal quotations omitted).

Under section 230(c)(1), "[n]o provider . . . of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  47 U.S.C. § 230(c)(1).  "No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section."  *Id.* § 230(e)(3).

---

[6] Amazon also says that, under section 230, it is immune from Plaintiff's request for a declaratory judgment.  Dkt. # 12 at 14.  But Plaintiff seeks merely a declaration that section 230 does not bar his other causes of action.  *See* Dkt. # 1 ¶¶ 68–70.  The Court does not see how the declaratory judgment request satisfies the three elements for section 230 immunity set forth in *Rigsby v. GoDaddy Inc.*, 59 F.4th 998, 1007 (9th Cir. 2023).  And Amazon does not offer argument specific to that claim.  The Court evaluates the declaratory judgment claim below.  *See infra* § III.E.  Nor does Amazon explain why it contends the CDA bars the CPA and breach of the implied duty claims, but not the breach of contract claim.  *See generally* Dkt. # 12.  Some courts have held that the CDA provides a complete defense to breach of contract claims.  *See, e.g., Jurin v. Google Inc.*, 768 F. Supp. 2d 1064 (E.D. Cal. 2011) (dismissing without leave to amend breach of contract claim premised on Google's alleged failure to adhere to its AdWords policy); *Schneider*, 108 Wash. App. at 41–42 (trial court properly concluded that section 230 barred the plaintiff's breach of contract claim premised on Amazon's alleged failure to remove negative book reviews).  In any case, the Court declines to consider arguments that Amazon has not presented.  *See Indep. Towers of Washington v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (courts "cannot manufacture arguments" for parties) (citation and quotation omitted).

Immunity arises when three elements are met: (1) "the provider is an interactive computer service"; (2) "the plaintiff is treating the entity as the publisher or speaker"; and (3) "the information is provided by another information content provider." *Rigsby v. GoDaddy Inc.*, 59 F.4th 998, 1007 (9th Cir. 2023). "When a plaintiff cannot allege enough facts to overcome Section 230 immunity, a plaintiff's claims should be dismissed." *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1097 (9th Cir. 2019).

      1.      Amazon is an interactive computer service

First, section 230 defines an "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server." 47 U.S.C. § 230(f)(2). Plaintiff does not dispute that Amazon is an "interactive computer service." *See generally* Dkt. # 16. The Court agrees. *See, e.g.*, *McCarthy v. Amazon.com, Inc.*, No. C23-0263JLR, 2023 WL 4201745, at *8 (W.D. Wash. June 27, 2023) (concluding that Amazon is an "interactive computer service"); *Joseph v. Amazon.com, Inc.*, 46 F. Supp. 3d 1095, 1105 (W.D. Wash. 2014) (holding that Amazon is an interactive service provider because Amazon "operates a website that allows consumers to purchase items online"); *Schneider v. Amazon.com, Inc.*, 108 Wash. App. 454, 461, 31 P.3d 37 (2001) (holding that Amazon is an "interactive computer service" because its website "enables visitors to the site to comment about authors and their work, thus providing an information service that necessarily enables access by multiple users to a server"); *Almeida v. Amazon.Com, Inc.*, No. 04-20004-CIV, 2004 WL 4910036, at *4 (S.D. Fla. July 30, 2004), *aff'd*, 456 F.3d 1316 (11th Cir. 2006) ("It is irrefutable that Defendant Amazon is an 'interactive computer service.'").

      2.      Plaintiff treats Amazon as a publisher

Second, the Court evaluates whether Plaintiff, in his claims under the CPA and for breach of the implied duty of good faith and fair dealing, seeks to hold Amazon liable as a publisher or

speaker of Plaintiff's content.  *Rigsby*, 59 F.4th at 1007.  Publication "involves reviewing, editing, and deciding whether to publish *or to withdraw from publication* third-party content." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102 (9th Cir. 2009) (emphasis added).  In other words, "removing content is something publishers do, and to impose liability on the basis of such conduct necessarily involves treating the liable party as a publisher of the content."  *Id.  See Roommates*, 521 F.3d at 1170–71 ("[A]ny activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230.").

For both claims, Plaintiff treats Amazon as publisher of Plaintiff's book reviews.  As for the implied duty claim, Plaintiff alleges Amazon did not sufficiently explain its decisions to remove his reviews, thereby implicating Amazon's role as a publisher.  Dkt. # 1 ¶57.  Similarly for the CPA claim, Plaintiff challenges Amazon's alleged deceptive practice "of not informing reviewers why it bans them or takes down their reviews," which also implicates Amazon's status as a publisher in removing users' content.  *Id.* ¶ 63.  The second element for section 230 immunity is also met.

3.      Plaintiff is the information content provider

And third, immunity applies only when the interactive computer service, here Amazon, does not provide the information at issue.  *See* 47 U.S.C. § 230(c)(1) ("No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information *provided by another information content provider*.") (emphasis added).  An information content provider is "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service."  *Id.* § 230(f)(3).  In this case, Plaintiff, not Amazon, provided the information at issue— the reviews Plaintiff drafted and posted on Amazon.  Plaintiff does not argue otherwise.  *See* Dkt. # 16 at 24–26.  The third element for section 230 immunity is satisfied.

Plaintiff's case resembles actions brought against social media platforms by users who challenged the platform's removal of social media posts or the platform's decision to revoke the user's, and not necessarily a "third party's," ability to post content.  In those cases, courts in the Ninth Circuit have consistently ruled that claims challenging the social media platform's decisions regarding content moderation are immunized by section 230(c)(1).  *See, e.g.*, *Atkinson v. Meta Platforms, Inc.*, No. 20-17489, 2021 WL 5447022, at *2 (9th Cir. Nov. 22, 2021) (breach of implied warranty claim targeting Meta's removal of the plaintiff's posts was barred by section 230(c)(1)); *Sikhs for Just., Inc. v. Facebook, Inc.*, 697 F. App'x 526 (9th Cir. 2017) (discrimination claim targeting Facebook's blocking of the plaintiff's "online content" was barred by section 230(c)(1)).  One analogous case is *Lancaster v. Alphabet Inc.*, 2016 WL 3648608 (N.D. Cal. July 8, 2016).  There, the plaintiff brought suit against the defendants because the defendants removed some of the plaintiff's videos hosted by the website YouTube. *Id.* at *3.  The plaintiff asserted ten causes of action, including breach of the covenant of good faith and fair dealing.  *Id.* at *1.  The court concluded that the CDA precluded the breach of the covenant of good faith and fair dealing claim, along with all other claims in which the plaintiff sought to hold the defendants liable for removing videos from the plaintiff's YouTube channel. *Id.* at *2, *5.  The court found that the three requirements for CDA immunity were met: (1) defendants YouTube and Google were "interactive computer services"; (2) the defendants' decision to remove content was performed in their capacity as publisher because removing "content is something publishers do, and to impose liability on the basis of such conduct necessarily involves treating the liable party as a publisher"; and (3) the removed videos were not created by the defendants.  *Id.* at *3 (quoting *Barnes*, 570 F.3d at 1103).

Another analogous case is *Federal Agency of News LLC v. Facebook, Inc.*, 432 F. Supp. 3d 1107 (N.D. Cal. 2020) ("*FAN*").  In that case, the plaintiffs, FAN, brought five causes of

action against Facebook for its removal of the plaintiff's Facebook account and page.  *Id.* at 1113–15.  The *FAN* court dismissed four of the claims with prejudice, including for breach of contract and breach of the implied covenant of good faith and fair dealing, because of Facebook's immunity under section 230(c)(1).  *Id.* at 1120–21.  As in *Lancaster* and this case, all three elements for CDA immunity were satisfied: (1) Facebook was an "interactive computer service" because it "provides or enables computer access by multiple users to a computer service"; (2) the plaintiff's claims treated Facebook as publisher because their claims were "based on Facebook's decision to remove FAN's account, postings, and content"; and (3) the content at issue was "created and disseminated by FAN, not Facebook."  *Id.* at 1117–21.

In response to Amazon's arguments on CDA immunity, Plaintiff says that Amazon mistakenly blurred the distinction between section 230(c)(1) immunity, which Amazon relies on, and section 230(c)(2) immunity.  *See* Dkt. # 16 at 24–25.  Plaintiff contends that section 230(c)(1) protects interactive computer service providers like Amazon against claims based on publishing or distributing content.  Dkt. # 16 at 24.  According to Plaintiff, when an interactive computer service provider "restricts" or "takes down" content, companies may invoke only section 230(c)(2)—and not section 230(c)(1)—to provide protection.  *Id.*  In support of this proposition, Plaintiff cites only Justice Thomas's concurrence on the Supreme Court's denial of certiorari in *Malwarebytes, Inc. v. Enigma Software Grp. USA, LLC*, 141 S. Ct. 13, 14–15 (2020).  *See* Dkt. # 16 at 24–25.  There, Justice Thomas questioned the Ninth Circuit's broad interpretation of section 230(c)(1) that often immunizes Internet companies against liability arising from content created by third parties.  *Malwarebytes*, 141 S. Ct. at 16–18.  Justice Thomas recommended deciding the "correct interpretation of § 230" in an appropriate case.  *Id.* at 18.

But Justice Thomas's concurrence does not constitute binding authority. And binding Ninth Circuit authority holds that section 230(c)(1) immunizes interactive computer service providers' decisions to both publish content or remove content. *See Barnes*, 570 F.3d at 1103 ("[R]emoving content is something publishers do . . . It is because such conduct is publishing conduct that we have insisted that section 230 protects from liability 'any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online.'") (quoting *Roommates*, 521 F.3d at 1170–71).

Because all three elements are met, Plaintiff's claims against Amazon for violating Washington's CPA and for breach of the implied duty of good faith and fair dealing are barred by section 230 of the CDA. *See, e.g.*, *Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090, 1117–18 (W.D. Wash. 2004) (concluding that section 230 barred a Washington CPA claim about Amazon's publication of third-party content); *FAN*, 432 F. Supp. 3d at 1116–21 (concluding that section 230 barred a cause of action for breach of the implied covenant of good faith and fair dealing based on Facebook's removal of the plaintiff's Facebook account and its blocking of the plaintiff's content).

E.    Declaratory Judgment

Count III in the complaint seeks a declaratory judgment that section 230 of the CDA bars none of Plaintiff's claims. *See* Dkt. # 1 ¶¶ 68–70. The "Declaratory Judgment Act creates only a remedy, not a cause of action." *Bisson v. Bank of Am., N.A.*, 919 F. Supp. 2d 1130, 1139 (W.D. Wash. 2013). Because the other causes of action fail to state a claim, Plaintiff has not established the requisite "substantial controversy" for a declaratory judgment. *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941). Further, the Court has concluded that the CDA bars two of Plaintiff's claims. *See supra* § III.D. As a result, the Court cannot grant

declaratory relief here.  *See Bisson*, 919 F. Supp. 2d at 1139 ("[T]he court cannot grant declaratory relief in the absence of a substantive cause of action.").

F.      Leave to Amend

On a Rule 12(b)(6) motion, "a district court must give plaintiffs at least one chance to amend a deficient complaint, absent a clear showing that amendment would be futile."  *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015).  *See DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) ("A district court does not err in denying leave to amend where the amendment would be futile."); *see also Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986) (explaining that leave to amend should be granted "unless the court determines that the allegations of other facts consistent with the challenged pleading could not possibly cure the deficiency").

Plaintiff has not asked for leave to amend, nor has he stated what additional facts he would plead in an amended complaint.  *See generally* Dkt. # 16.  The Court concludes that granting leave to amend would be futile.  Amending the breach of contract claim would be futile because this claim seek to hold Amazon liable for conduct—removing Plaintiff's reviews and revoking Plaintiff's review privileges—that the Conditions and Guidelines expressly permitted. *See supra* § III.B.1.  Allowing Plaintiff to plead additional facts will not remedy this fatal deficiency.  As for the CPA claim, Plaintiff cannot plead additional facts to cure the claim's deficiencies because of the Court's conclusion that Amazon's exercise of a right permitted by the contract and disclosed to Plaintiff is not an unfair or deceptive act or practice.  *See id.* § III.C.1. Reasonable consumers, after reading the Conditions and Guidelines, would understand that Amazon reserves the right to remove reviews or terminate access to services in Amazon's sole discretion.  *See id.*  Furthermore, Plaintiff cannot possibly make out plausible claims under Washington's CPA and for breach of the implied duty of good faith and fair dealing because

both claims are barred by the CDA.  *See id.* § III.D.  Accordingly, because the complaint's deficiencies cannot be cured by additional allegations, the Court declines to grant Plaintiff leave to amend.

**IV**

**CONCLUSION**

Based on the above, the Court GRANTS Amazon's motion and DISMISSES Plaintiff's complaint with prejudice and without leave to amend.  Dkt. # 12.

Dated this 18th day of July, 2023.

John H. Chun
United States District Judge